UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCO MARTINEZ, individually and on behalf of all others similarly situated, | No. 20-cv-00008 |
| Plaintiff, | Judge Thomas M. Durkin |
| v. | |
| ANDREW SAUL, Commissioner of the Social Security Administration | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Francisco Martinez brings this putative class action against Andrew Saul, Commissioner of the Social Security Administration ("the SSA"), alleging that the agency uses an unlawful procedure to calculate the disability benefits of individuals who have settled their workers' compensation claims for a lump sum payment. Commissioner Saul filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing, among other things, that Mr. Martinez's claim is moot. The Court agrees, and accordingly grants the motion.

**Background**

Mr. Martinez is a former metal fabricator and painter who became disabled as a result of injuries to his spine and left shoulder.[1] He filed for disability benefits

---

[1] The following is based on allegations appearing in Mr. Martinez's amended complaint as well as documents attached to the SSA's motion to dismiss. Those documents may be considered here because a court that reviews a factual attack on jurisdiction may "view whatever evidence has been submitted on the issue to

through the SSA in December 2016 and had a workers' compensation case pending at the time. The workers' compensation case ended in June 2018 and Mr. Martinez received a lump sum settlement. A year later, in June 2019, an SSA administrative law judge issued a decision in favor of Mr. Martinez and found that he was entitled to disability benefits. The decision did not specify the amount of benefits Mr. Martinez could expect to receive, stating instead that another office would process the decision and might ask for more information. The decision also stated that the "workers' compensation offset provisions at 20 CFR 404.408 may be applicable," meaning that Mr. Martinez might receive less in disability benefits as a result of his workers' compensation settlement.

About a month later, on July 25, 2019, the SSA sent Mr. Martinez a form asking him to verify information about his workers' compensation settlement. R. 22-3. The form said that the settlement "affect[s] the amount of Social Security benefits we can pay you," and also said that a completed version of the form "will ensure that we pay you the correct Social Security benefit[s]." *Id*. According to Mr. Martinez, he completed the form and returned it to the SSA a few days later. *See* R. 26 ¶ 42; R. 22-4. Around that time, on July 28, 2019, the SSA also sent Mr. Martinez a Notice of Award, which stated that Mr. Martinez would receive $29,642.50 in retroactive pay and that his forward-looking monthly pay would be $50. *See* R. 26 ¶ 38; R. 22-2. Both

---

determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted). Mr. Martinez did not dispute that the SSA could properly attach the materials to its motion to dismiss.

parties agree that the amounts were incorrect. But the notice also said that "[w]hen processing your claim we found we needed more information. To decide how much your benefits will be for August 2016 through June 2019, we need proof of your WORKERS COMPENSATION BENEFITS." R. 22-2 (emphasis in original). The notice further stated that once the SSA received that information, it would "decide the amount of your past-due benefits and send another letter telling you how much the representative can charge. You can help us finish the work on your claim by taking the information to any Social Security office."[2] R. 22-2.

Seeking to correct the amounts listed on the notice, counsel for Mr. Martinez sent a letter to the SSA office in Elgin, Illinois on August 6, 2019 and August 13, 2019. Counsel sent another letter to the Baltimore, Maryland Payment Center on September 6, 2019. Mr. Martinez then filed this lawsuit on January 2, 2020.

A month later, in February 2020, the SSA issued a Notice of Change in Benefits. The notice included new retroactive and forward-looking benefit amounts. R. 22-6. More specifically, the notice said that Mr. Martinez was now entitled to receive $1,866 a month instead of $50, and that the SSA would send him tens of thousands of dollars in back payments. *Id.*

Mr. Martinez amended his complaint after receiving the updated notice. He does not seem to take issue with the payments he currently receives, alleging that his

---

[2] This sentence appeared in a section of the notice titled "Information about Representative's Fees". The representative referred to in this section is someone who helps a claimant file a Social Security claim, such as an attorney. According to the notice, the SSA must approve the representative's fee and will usually withhold a percentage of past-due benefits in order to pay the fee.

underpayments were "remedied" in February 2020. R. 26 ¶ 47. Nevertheless, he challenges the procedure by which the SSA calculates the benefits of claimants who have settled their workers' compensation claims for a lump sum payment. He alleges that the SSA systematically fails to verify if and when a lump sum settlement has occurred, and also fails to appropriately factor that settlement into the reduction of disability payments. More to the latter point, Mr. Martinez contends that the SSA, when calculating a claimant's disability benefits, inappropriately relies on the agency's internal operating manual, whose provisions allow the SSA—in certain circumstances—to assume that a claimant is receiving the maximum amount of workers' compensation payments allowed under state law. He argues that no portion of the Social Security Act or applicable regulations permits the agency to make such an assumption, and further contends that the provisions found in the agency's operating manual do not deserve deference as a matter of law.

As such, Mr. Martinez's amended complaint seeks declaratory and injunctive relief, aiming to enjoin the SSA from continuing to implement its settlement reduction policy in an unlawful manner. The complaint also seeks, among other things, an order requiring the SSA to recalculate the settlement reduction amount for Mr. Martinez and each class member, and pay back any disability benefits that have been improperly withheld.[3]

---

[3] The complaint alternatively seeks a writ of mandamus directing the SSA to fix the alleged errors in its benefit calculations. The complaint seeks this writ in the event the Court determines that Mr. Martinez failed to exhaust the administrative review process required under 42 U.S.C. § 405(g). Because the Court finds that Mr. Martinez's claim is moot, the Court declines to reach the question of whether the administrative exhaustion requirement has been satisfied.

**Standard**

"Federal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). Therefore, "[m]ootness is evaluated under Rule 12(b)(1)[.]" *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc*., 2017 WL 2619144, at *2-3 (N.D. Ill. June 16, 2017) (citation and internal quotation marks omitted). "In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015). "A factual challenge contends that there is in fact no subject matter jurisdiction, even if the pleadings are formally sufficient." *Id*. (internal citations omitted). In considering that challenge, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital*, 572 F.3d at 444 (7th Cir. 2009) (internal quotation marks omitted). "In contrast, a facial challenge argues that the plaintiff has not sufficiently alleged a basis for subject matter jurisdiction." *Silha*, 807 F.3d at 173. In this case, the SSA's Rule 12(b)(1) motion is properly understood as a factual challenge to subject matter jurisdiction because it relies on evidence—including, among other documents, Mr. Martinez's notice of change in benefits—to show that his claim is moot. *See id*.

**Discussion**

The Court begins (and ends) its analysis in this case with a threshold issue: whether Mr. Martinez's claim is moot. Article III of the Constitution limits a federal

court's jurisdiction to "cases" and "controversies," *Campbell–Ewald Co. v. Gomez*, 136 S.Ct. 663, 669 (2016), and demands that the parties maintain a personal stake in the case "through all stages of federal judicial proceedings, trial and appellate," *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations and quotations omitted). Accordingly, a case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during the litigation, the action can no longer proceed and must be dismissed as moot.*" Wright v. Calumet City, Ill.*, 848 F.3d 814, 816 (7th Cir. 2017) (citation omitted). The SSA bears the burden of showing that the case has become moot. *See Killian v. Concert Health Plan*, 742 F.3d 651, 660 (7th Cir. 2013) ("[T]he burden of demonstrating mootness is a heavy one, borne by the party seeking to have the case declared moot.") (citation and quotations omitted).

The SSA argues that Mr. Martinez's claim is moot because he is no longer underpaid, he is not threatened with a prospective injury, and he does not have a stake in the outcome of this lawsuit. R. 22 at 7 n.8; R. 28 at 3; R. 31 at 2-4. The Court agrees. When Mr. Martinez filed his original complaint in January 2020, he alleged that the SSA "continues to" underpay him in disability benefits and owed him more than $20,000 in back payments. R. 1 ¶¶ 6, 43. At that time, there seemed to be little reason to question whether Mr. Martinez had standing under Article III or whether his claim had become moot. But a month later, in February 2020, the SSA sent Mr. Martinez a Change in Benefits Notice that incorporated the lump sum settlement

6

information he provided the agency in July 2019. *See* R. 22-7 ¶¶ 6-7. The notice informed Mr. Martinez that he was entitled to receive $1,866 a month in forward-looking benefits instead of $50, and that the SSA would send him tens of thousands of dollars in back payments. R. 22-6. In light of these developments, Mr. Martinez's first amended complaint now alleges that the SSA has "remedied" his underpayment issue, R. 26 ¶ 47, and his response brief similarly notes that his "benefits have been corrected for now," R. 30 at 9. In other words, Mr. Martinez does not seem to take issue with the disability benefits he is receiving; instead, he is focused on—as he puts it—the "countless other claimants [who] remain in his shoes." R. 26 ¶ 47. But that is no basis to allow Mr. Martinez to continue to serve as the named plaintiff in this case—he must have a "personal stake in the outcome of the suit." *Banks v. Nat'l Collegiate Athletic Ass'n*, 977 F.2d 1081, 1085 (7th Cir. 1992). Because he does not, his claim is moot.

Against this conclusion, Mr. Martinez argues that the same events that led to this lawsuit will happen again because his disability benefits are not stagnate. He points out that SSA regulations require the agency to redetermine a claimant's disability benefits periodically while a reduction is in place. R. 30 at 9 (*citing* 20 C.F.R. § 404.408(*l*)(1)). And he says that each time his benefits are recalculated, the SSA "will apply substantially the same procedures that he challenges in this lawsuit." *Id*. The Court agrees with Mr. Martinez that 20 C.F.R. § 404.408(*l*)(1) requires the SSA to periodically redetermine a claimant's benefits. But Mr. Martinez provides no support for his proposition that the SSA "will apply substantially the same

procedures" at issue in this case. And most importantly, the possibility that Mr. Martinez will be harmed again is purely speculative because the SSA now has the critical information that it previously lacked—namely, his lump sum settlement amount. There is no reason to think that the SSA has lost that information or otherwise misplaced it.

Mr. Martinez also argues that his claim is not moot because the challenged procedure is still in place. He points to *Ozinga v. Prince*, where the Seventh Circuit said that "[w]hen a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect." 855 F.3d 730, 734 (7th Cir. 2017). That is true. But the claim alleged here is still moot because a decision by this Court regarding the challenged procedure would have "no practical impact on [Mr. Martinez]." *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) (concluding that student's constitutional challenge to school board policy was moot because policy no longer applied to student); *see also Wright-Gray v. Hamos*, 2012 WL 366597, at *3-4 (N.D. Ill. Feb. 2, 2012) (finding that class representative's challenge to government policy was moot because any decision on the merits would not affect her legal rights). To this point, Mr. Martinez seeks an injunction enjoining the SSA from continuing the procedure, as well as a declaration stating mostly the same. He also seeks an order requiring the SSA to recalculate the lump sum reduction amount for himself and each class member, and pay back any disability benefits that have been improperly withheld.

But as mentioned, Mr. Martinez's benefits were recalculated and corrected in February 2020 and there is no indication in the record that he disputes the amount he now receives. Furthermore, the SSA is in possession of Mr. Martinez's lump sum settlement information. It stands to reason, then, that the relief Mr. Martinez requests from this Court would not affect his legal rights. *Stevens v. Hous. Auth. of S. Bend, Indiana*, 663 F.3d 300, 306 (7th Cir. 2011) ("When a court's decision can no longer affect the rights of the litigants in the case before it, the case becomes moot."); *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (noting that plaintiff must "demonstrate that the court's adjudication would affect it in some way.").

Moreover, Mr. Martinez's claim does not meet the two well-established exceptions to the mootness doctrine: cases involving "voluntary cessation," and those that are "capable of repetition yet evading review." *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537 (7th Cir. 2005). Under the first exception, a defendant's voluntary cessation of "allegedly illegal conduct does not render a case moot unless the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 747 (7th Cir. 1999) (citation omitted). Here, there is no cessation by the SSA—both parties agree that the challenged procedure still exists. *See* R. 30 at 9; R. 31 at 3. To the extent any cessation has occurred, it is that the SSA is no longer withholding some of Mr. Martinez's disability benefits. Even so, there is no "reasonable expectation" that the wrong will be repeated as to Mr. Martinez because he sent the SSA his lump sum settlement

9

information, so the agency can no longer assume he is receiving the maximum amount of settlement payments allowed under state law. *See Jones v. Sullivan*, 938 F.2d 801, 807 (7th Cir. 1991) (finding that voluntary cessation exception did not apply because there was no "reasonable expectation" plaintiffs themselves would be subjected to challenged HHS policy).

The second mootness exception—"capable of repetition yet evading review"—only applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011). Here, again, it is undisputed that the SSA continues to apply the challenged procedure (which suggests that a different disability recipient might be able to bring suit), and as already discussed, there is no "reasonable expectation" that Mr. Martinez *himself* will be subjected to it. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (noting that there must be a "demonstrated probability that the same controversy will recur *involving the same complaining party*") (emphasis added); *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (explaining that exception applies "where the challenged situation is likely to recur and the same complaining party would be subjected to the same adversity"); *Wright-Gray*, 2012 WL 366597, at *4 (same).

Nor does it help that Mr. Martinez filed this case as a putative class action. Although he alleges that other SSA disability recipients are affected by the challenged procedure, he has not yet moved for class certification, and if "the named

plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation." *Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) (citation omitted).

The Supreme Court has repeatedly recognized that a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (citation omitted). The theoretical possibility that Mr. Martinez might have his disability benefits miscalculated again is not enough to keep his claim alive. Nor does the Court find persuasive his argument that his claim is not moot simply because the challenged procedure is still in place. Courts do not have a license to retain jurisdiction over a case in which one of the parties plainly lack an interest. Mr. Martinez no longer has an actual stake in the outcome of this lawsuit. His claim must therefore be dismissed.

## Conclusion

The SSA's motion to dismiss, R. 21, is granted. Mr. Martinez may file a motion for leave to file an amended complaint if he believes he can cure the deficiencies described in this opinion. That motion must be filed within 21 days or dismissal will be with prejudice. Should Mr. Martinez file a motion for leave, it must be

accompanied by a memo that explains why the amended complaint cures the deficiencies mentioned herein. The memo must not be longer than 5 pages.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  March 4, 2021